IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIN L. BUTZEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 7941 |
| | ) |
| MICHAEL J. ASTRUE, | ) Judge Sheila Finnegan |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erin L. Butzen seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 416, 423(d). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a motion for summary judgment asking for a remand. In support of that request, Plaintiff argues that the ALJ failed to obtain a valid waiver of counsel from her before proceeding with a hearing, and erred in adopting her stated disability onset date. Plaintiff also claims that the case should be remanded pursuant to Section 6 of 42 U.S.C. § 405(g) because she has new evidence demonstrating that she was disabled as far back as 2002. For the reasons set forth below, the Court now grants Plaintiff's motion and remands the case for further proceedings.

## BACKGROUND

Plaintiff was born on September 11, 1957. (R. 20). She is married with no children, and her husband earns approximately $60,000 to $65,000 per year from his employment. (R. 480, 482). Plaintiff applied for DIB on March 28, 2006, alleging a disability onset date

of November 1, 2005. (R. 20-24). Her stated medical conditions included possible heart attack, emphysema, low back pain, back fusion surgery, lumbar radiculopathy, depression and a blood disorder. (R. 52). After confirming that Plaintiff's date last insured was March 31, 2003, the Social Security Administration ("SSA") determined that she did not qualify for disability benefits because she "ha[d] not worked long enough under Social Security." (R. 27-29, 31-33). Plaintiff requested an administrative hearing, and on September 10, 2008, she appeared before Administrative Law Judge ("ALJ") David W. Thompson. She did not have counsel at that time so the ALJ explained the costs and benefits of representation and provided her with a list of attorney names. (R. 465-71). He then continued the hearing because Plaintiff did not feel well. (R. 470).

At a subsequent hearing on January 20, 2009, the ALJ heard testimony from Plaintiff, who again appeared without counsel, and from a vocational expert. Shortly thereafter, on March 13, 2009, the ALJ found that Plaintiff did not have sufficient quarters of coverage to qualify for disability benefits and, thus, was not disabled under the Act. (R. 12-18). The ALJ noted that Plaintiff alleged disability beginning November 1, 2005, and that she had "only 16 of the 20 quarters of coverage required for disability insured status during a period of 40 calendar quarters beginning no more than 10 years before the alleged onset date of her disability." (R. 17). He also confirmed that her "earnings record cannot be credited with additional wage, self-employment income, or quarters of coverage." (*Id.*). Though Plaintiff did not apply for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381a, the ALJ confirmed that she was not eligible for such benefits given her husband's income. (R. 18).

2

The Appeals Council denied Plaintiff's request for review on November 24, 2010, and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. (R. 3-7, 10-11).

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Analysis**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he did not ensure that she made a valid waiver of her right to counsel, and he failed to fully develop the record in establishing her disability onset date.  Plaintiff also claims to have new evidence of disability dating back to 2002, and seeks a Section 6 remand for consideration of that evidence.

**1.    Waiver of Counsel**

Claimants have a statutory right to be represented by counsel at a disability hearing, but that right may be waived.  *Skinner*, 478 F.3d at 841.  Plaintiff first objects that the ALJ did not obtain a valid waiver of counsel because his explanation of her rights was "rambling" and overly "complicated," and did not provide all of the relevant information. (Doc. 16, at 5, 6).  To ensure that a waiver of counsel is valid, an ALJ "must explain to pro se claimants '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'"  *Skinner*, 478 F.3d at 841 (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)).

In the absence of a valid waiver of counsel, the Court will remand a case only if there is evidence that the ALJ failed to fully and fairly develop the record.  *Id.* ("The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record."); *Gatewood ex rel. D.P. v. Astrue*, No. 10 C 283, 2011 WL 904864, at *8 (N.D. Ill. Mar. 14, 2011). In that regard, the ALJ "must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'"  *Id.* at 841-42 (quoting *Smith v. Secretary of Health, Educ. and*

*Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). The Commissioner bears the burden of showing that the ALJ adequately developed the record. *Id.* at 842.

At the first hearing on September 10, 2008, the ALJ observed that Plaintiff did not have an attorney and asked her if she recalled receiving notice of her right to be represented. (R. 465). Plaintiff did not recall any such notices, which had been sent to her in May, September and October 2006, and again in August 2008. (R. 27-29, 31-33, 35-39, 292-97). The ALJ then proceeded to explain the costs and benefits of retaining counsel. He noted that disability law is complex and wide-ranging, and that Plaintiff had the burden of proving all the elements of her case. (R. 465). He further cautioned that "if you don't know all of those elements, it's kind of difficult to make sure that you hit them all." As a result, he said, "a lot of people are willing to get an attorney to help them." (*Id.*).

The ALJ next discussed the reasons why people choose not to hire attorneys, and explained why those reasons should not deter Plaintiff from seeking representation. He first noted that although attorneys are expensive, they work on a contingency basis and would agree to accept 25 percent of any lump-sum benefits awarded to her. (R. 466). The ALJ acknowledged that Plaintiff would thus end up with less money, but he also stressed that "if you have a lawyer who understands everything . . . and knows how to make sure everything is met, then it's arguable that you have a better chance of winning your case." (R. 466-67). The ALJ next noted that people sometimes decline representation because they do not want the case to be delayed. He said that this would not be a deterrent for Plaintiff, however, because he put her case "at the top of the list," and would "have you back here in just a couple of months. . . . It would only be enough time for the attorney to

5

get involved, get the records that they need, prepare for the case and then we'd be having another hearing." (R. 467).

The ALJ was careful to explain that Plaintiff was not required to hire an attorney, and he confirmed that if she wanted to proceed, he was "ready to proceed today." (R. 469). Plaintiff ultimately stated that she did not feel well and the ALJ continued the hearing to another date "because I want you to fully understand what's happening for your hearing." (R. 470). The ALJ told Plaintiff that he would give her a list of "names and phone numbers of attorneys that could help you out," and suggested that she "might want to talk to some friends . . . to get some help and direction." (*Id.*). He also explained how Plaintiff could obtain a copy of her file, and noted that she could review it herself or ask a friend or attorney to review it for her. (R. 470-71).

When Plaintiff appeared for her second hearing on January 20, 2009, the ALJ reminded her that at the previous hearing, he "went over your rights to have a representative with you to help you." (R. 475). When Plaintiff responded "[y]es," the ALJ observed that Plaintiff still did not have an attorney and asked about her efforts to obtain counsel. Plaintiff stated that she "talked to somebody but he didn't know because of my earnings if I'd even be eligible." (*Id.*). She later added that the lawyer told her that her husband "makes too much money" for one of the disability programs, and that she did not "make enough credits" to qualify for another disability program. (R. 482). The ALJ noted that four months had passed since the previous hearing, which he deemed "sufficient time to locate an attorney," and proceeded to hear testimony in Plaintiff's case. (R. 475-76).

The record demonstrates that the ALJ did notify Plaintiff of most of her rights regarding counsel. Unfortunately, the ALJ failed to tell Plaintiff that attorneys' fees are

6

subject to court approval, which is a necessary element for obtaining a valid waiver of counsel. The ALJ also said nothing about the possibility of free representation. *Skinner*, 478 F.3d at 841. *See also Martin v. Astrue*, No. 1:08-cv-00046, 2009 WL 187716, at *6 (N.D. Ind. Jan. 26, 2009) (no valid waiver of counsel where the ALJ failed to notify the plaintiff that "court approval of fees is required," and "did not explain that the limitation on attorney fees is twenty-five percent of any past due benefits."); *Coleman v. Astrue*, 661 F. Supp. 2d 1016, 1024 (S.D. Ind. 2009) (ALJ did not obtain valid waiver of counsel where he did not inform the plaintiff of "the possible availability of free counsel," or advise her that "any fee request by an attorney would have to be approved."); *Trossen v. Astrue*, No. 10 C 380, 2010 WL 5067411, at *7 (E.D. Wis. Dec. 6, 2010) (waiver invalid where the ALJ did not inform the plaintiff that the court would need to approve any attorneys' fees).

Defendant does not dispute that the ALJ's discussion regarding counsel was technically incomplete, but he argues that "there was little else that the ALJ could have done to make Plaintiff aware of her right to representation." (Doc. 17, at 6). Defendant believes that Plaintiff "clearly understood that she could obtain an attorney" because she "did indeed meet with, and speak with, a lawyer." (*Id.*). She also did not raise any concern about the expense of retaining counsel. In Defendant's view, these facts demonstrate that "Plaintiff's claim that she did not validly waive her right to representation should be rejected." (*Id.* at 6-7).

Neither party has cited any case suggesting whether, in circumstances similar to those presented here, an ALJ's failure to mention certain elements of the Seventh Circuit's test renders a finding of waiver invalid. The Court need not resolve this issue, however,

7

because a remand is necessary in any event due to the ALJ's failure to fully and fairly develop the record in this case.

### 2. Full and Fair Development of the Record

The ALJ denied Plaintiff's request for benefits solely on the basis that she did not have enough work credits to qualify for coverage at the time of her alleged disability onset date. To be eligible for benefits, a claimant must establish that her disability arose on or before her date last insured. 42 U.S.C. § 423(a)(1)(A) and (c)(1); *Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011). A claimant, like Plaintiff, who is over the age of 31 and does not have any prior period of disability, must also have "not less than 20 quarters of coverage during the 40-quarter period" preceding the disability onset date. 42 U.S.C. § 423(c)(1)(B). Plaintiff concedes that her date last insured was March 31, 2003, and that she alleged a disability onset date of November 1, 2005. Based on those dates, the ALJ determined that Plaintiff did not have sufficient quarters of coverage from 1996 through 2005 to qualify for disability benefits. (R. 17).

Plaintiff claims that the ALJ erred in adopting the November 1, 2005 date because in doing so, he failed to develop facts that may have supported an earlier onset date. (Doc. 18, at 1-2). An ALJ "has a heightened responsibility to an unrepresented claimant," without regard to any waiver of counsel. *Slaughter v. Barnhart*, No. 05 C 5988, 2006 WL 2506215, at *3 (N.D. Ill. July 21, 2006) (citing *Binion*, 13 F.3d at 245 ("[T]he ALJ has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid.") An ALJ satisfies his duty to develop the record fully and fairly if he "probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245.

It appears from the evidence that if Plaintiff had amended her disability onset date to March 31, 2003, she would have had enough quarters of coverage to qualify for benefits. (R. 51). Yet the ALJ never informed Plaintiff that she was allowed to amend her disability onset date, or that it could affect the outcome of her case. *See, e.g., Burke v. Astrue*, No. 08 C 50136, 2009 WL 2601300, at *1 (N.D. Ill. Aug. 21, 2009) (noting that during the claimant's administrative hearing, he and his counsel amended the alleged onset date). The ALJ did not ask Plaintiff when she first started having trouble with her impairments, or why she selected November 1, 2005 as her disability onset date, even though she appears to have engaged in only minimal employment from 2002 through 2005. (R. 51, 57, 481-82).[1] Nor did he inquire whether she had any medical records dating back to her date last insured, or suggest that she provide such evidence if it existed. Rather, the ALJ asked Plaintiff questions about her current conditions, abilities, limitations and treatment. This is troubling because the ALJ's entire decision focused on Plaintiff's lack of coverage, which he determined based on Plaintiff's stated disability onset date.

Defendant finds it significant that in denying Plaintiff's application for benefits initially and on reconsideration, the Social Security Administration sent Plaintiff letters explaining that she "ha[d] not worked long enough under Social Security." (R. 27-29, 31-33; Doc. 17, at 7). It is apparent that Plaintiff did not understand this finding, as evidenced by the fact that she never sought to amend her disability onset date and did not produce existing

---

[1] Plaintiff earned $6,443.50 ($537 per month) in 2002, nothing in 2003, $2,114.00 ($176.17 per month) in 2004, and $1,684 ($140.33 per month) in 2005. (R. 51). None of these figures suffices as presumptive substantial gainful activity under 20 C.F.R. § 404.1574(b)(2). *See Fischer v. Barnhart*, 129 Fed.Appx. 297, 302 (7th Cir. 2005) ("Earnings of more than $700 per month create a rebuttable presumption of substantial gainful activity.")

9

medical records that may have supported an earlier onset date. Defendant also stresses that the ALJ left the record open so Plaintiff could produce additional medical records, and told her to submit "everything" from her doctor. (R. 477; Doc. 17, at 8). The ALJ made this comment during a discussion of Plaintiff's ongoing medical treatment, however, and he did not explain that "everything" included records prior to November 2005. It was not until Plaintiff retained a lawyer for her appeal that she finally submitted her records from 2002 to 2005. (R. 393-94, 403-39, 442-49, 458).

Defendant next suggests that even if the ALJ had seen Plaintiff's medical records from 2002 through 2005, it would not have changed the outcome of the case. *See McKinzey v. Astrue*, 641 F.3d 884, 992 (7th Cir. 2011) ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.") This may be true if the November 1, 2005 onset date was proper. As explained, however, the ALJ failed to fully and fairly develop the record in that regard. In addition, the ALJ did not discuss Plaintiff's medical condition at all, so the Court cannot determine whether the additional records would have made a difference in the case.

On remand, the ALJ should explore whether the evidence supports amending the disability onset date and, if so, whether Plaintiff has any disabling impairments that would entitle her to benefits. The Court expresses no opinion as to whether Plaintiff may ultimately qualify for benefits under the Act.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 15] is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Administration for further proceedings consistent with this opinion.

ENTER:

Dated: September 6, 2011

_Sheila Finnegan_
SHEILA FINNEGAN
United States Magistrate Judge